# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **RUTH SHIPP,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06CV00094 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BODDIE-NOELL ENTERPRISES,** | ) | By: James P. Jones |
| **INC., D/B/A HARDEES OF** | ) | Chief United States District Judge |
| **TAZEWELL,** | ) | |
| | ) | |
| Defendants. | ) | |

*Joseph Wolfe, Wolfe Williams & Rutherford, Norton, Virginia, for Plaintiff; C. Kailani Memmer, Guynn, Memmer & Dillon, P.C., Roanoke, Virginia, for Defendant.*

In this premises liability case based on Virginia tort law, the plaintiff contends that she fell in the parking lot of the defendant's restaurant and was injured. The defendant has moved for summary judgment. For the reasons stated hereafter, the motion will be granted and final judgment entered in favor of the defendant.

I

The facts of the case as reflected in the summary judgment record are as follows. The plaintiff, Ruth Shipp, fell and fractured her elbow in the parking lot of a Hardee's fast-food restaurant located in Tazewell, Virginia, operated by the defendant, Boddie-Noell Enterprises, Inc. The plaintiff is a resident of Baltimore,

Maryland, and had traveled with her husband to Tazewell in September 2004 to visit relatives.

On the morning of September 3, 2004, the plaintiff had planned to meet her brother and niece at the Hardee's in Tazewell in order to take a walk in an area around the restaurant. The plaintiff drove by herself to the restaurant and arrived shortly before nine in the morning. She parked her car at the front of the parking lot several yards from the entrance to the building. The Hardee's parking lot is typical of those found at many fast-food restaurants. The parking lot is paved with asphalt and there is a raised area of concrete that covers the ground surrounding the front and sides of the building that serves as a sidewalk for customers. There are at least two concrete islands that extend as raised sidewalks into the parking lot.

While waiting for her brother and niece to arrive, the plaintiff entered the Hardee's to purchase a cup of coffee. Upon exiting the restaurant, the plaintiff stepped off the concrete sidewalk and began walking on the asphalt portion of the parking lot towards her car. While approaching one of the concrete islands near the front of the building, she fell. The plaintiff saw no trash or debris of any kind in the parking lot. The weather was sunny and dry, and nothing obstructed the plaintiff's vision while walking.

Prior to falling, the plaintiff saw no defect in the asphalt. She was unaware of what had caused her to lose her balance and fall. However, she testified that after she fell she noticed that there was a "rut" in the asphalt near the concrete medium, and that this area looked as if it had been worn down by traffic. She estimated that this "rut" or "dip" in the asphalt was at least an inch and three quarters to two inches deep and approximately six or seven inches around. The plaintiff believes that when she stepped into the dip her balance was thrown off causing her to fall.

Although a man approached the plaintiff after she fell and asked if she needed assistance, there appear to have been no eyewitnesses to the fall. After falling, the plaintiff believed her arm was broken and returned to her car to wait for her brother to arrive so he could take her to the hospital. When her brother arrived, he did not inspect the area where the plaintiff had fallen nor did he notice any defect in the pavement.

Several days after the accident the plaintiff returned to Hardee's with her husband, Bernard Shipp, to take pictures of the parking lot. Although the plaintiff remained in her vehicle, she directed her husband to the area where she believed she had fallen. The plaintiff's husband took pictures of the area. However, none of the pictures reflect a dip or rut similar to the size and depth that the plaintiff described. In fact, the plaintiff's husband described the dip he photographed as being hard to see

and that one would not be able to tell it was there by simply looking at it. He also testified that "you would almost have to have a magnifying glass to tell that there is a dip there or measure it with straight bar, you know, a straight board of some type." (Bernard Shipp Dep. 15.) The defendant's husband also testified that he believed the dip he photographed had developed because the asphalt had been softened by the summer heat and pushed down by vehicular traffic. However, no expert testimony was abduced to establish the potential causes of any dip in the asphalt or how long it may have been present.

According to her affidavit, on March 7, 2007, the general manager of the Hardee's, Patricia Billips, examined the general area where the plaintiff fell. Billips found a slight indentation. She measured the indentation and found that it measured 1/16th of an inch in depth. She found no dip the size and depth of the one that the plaintiff described. Billips has worked at the Hardee's since 1997 and made oath that the asphalt portion of the parking lot had not been repaved, resurfaced or modified in any substantial way since the date of the plaintiff's accident. She further swore that prior to the accident she had never been informed that any dip was present in the parking lot and that she does not know what caused the alleged dip or how long it may have been present prior to the plaintiff's accident.

No evidence was presented that the defendant had actual notice of the dip that the plaintiff alleges caused her fall. The plaintiff also failed to present any evidence regarding how long the alleged dip had been present on the surface of the parking lot or what had caused it.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual

-5-

Case 1:06-cv-00094-JPJ-PMS   Document 30   Filed 04/12/07   Page 5 of 10   Pageid#: 235

basis." *Id.* at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotations omitted).

Although the moving party must provide more than a conclusory statement that there are no genuine issues of material fact to support a motion for summary judgment, it "'need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'" *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994) (quoting 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720, at 10 (2d ed. Supp. 1994)); *see also Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party's evidence must be probative, not merely colorable, *Anderson,* 477 U.S. at 256, and cannot be "conclusory statements, without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).

-6-

The court's jurisdiction to hear this case is premised on the diversity of the parties' citizenship and the amount in controversy. 28 U.S.C.A. § 1332(a) (West 2006). Based on the facts of this case, Virginia substantive law applies. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under Virginia law, to recover in a premise liability case, the plaintiff must prove (1) that the proprietor had knowledge, actual or constructive, that a defect existed on its property; (2) that such a defect created an unsafe condition on the property; and (3) that such an unsafe condition was the proximate cause of the plaintiff's injuries. *See Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161-62 (1977).

Even where a plaintiff shows the existence of a defect that is unreasonably dangerous, the plaintiff must nevertheless prove that the defendant had notice of the defect. A failure to establish such notice is fatal to a plaintiff's claim under Virginia law. Actual notice can be proved by showing the defendant or one of its agents created the defect or knew of its existence. *See Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 651 (1990); *Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188, 190 (1962). Constructive notice can be established by showing that the defect "had existed for such a length of time as to make it the owner's duty in the exercise of

-7-

Case 1:06-cv-00094-JPJ-PMS   Document 30   Filed 04/12/07   Page 7 of 10   Pageid#: 237

ordinary care to have discovered it." *Cannon v. Clarke*, 167 S.E.2d 352, 355 (1969) (citation omitted).

After carefully reviewing the summary judgment record, I will grant the defendant's motion because the plaintiff has presented no evidence that raises a triable question of fact that the defendant had notice of the alleged defect in its parking lot. Even if there is a question over whether there was a dip in the asphalt and the dimensions of such a dip, there is no basis for a jury to conclude that the defendant had notice, actual or constructive, of such a defect.

The plaintiff has failed to adduce any facts indicating that anyone knew of the existence of the alleged defect prior to the accident. Moreover, the plaintiff has not established that the conduct of the defendant or one of its agents actually contributed to the creation of a defect in the parking lot. Without such showings the plaintiff cannot establish actual notice. *See Colonial Stores*, 125 S.E.2d at 190. Accordingly, her claim must fail unless some facts would allow a jury to conclude that the defect existed for such a length of time that it would have been unreasonable for the defendant not to have detected and corrected the defect or at least warned of its presence. *See Cannon*, 167 S.E.2d at 355.

The plaintiff failed to introduce evidence that Hardee's employees noticed a defect prior to the day in question or were informed of such a defect by customers

who had fallen in the parking lot or otherwise reported its existence. First, the photographs taken of the accident scene do not reflect the existence of a dip of the dimensions described by the plaintiff. Although a slight indentation measuring 1/16th of an inch was photographed, it was only discovered after a careful survey of the parking lot by the Hardee's manager. Further, the plaintiff's husband testified that the dip he observed was nearly impossible to see and that one would almost need to use a magnifying glass to notice it. Considering the difficulty he had in finding and recording the dip only days after the accident, it is hard to see how the defendant could be faulted for not detecting the alleged defect upon a reasonable inspection of the parking lot.

Further, although the plaintiff's husband did surmise that a dip was present in the parking lot because the summer heat had caused the asphalt to become malleable, the plaintiff did not attempt to present any expert testimony regarding the cause of such a dip or how long it could have existed prior to the date of the accident. There are simply no facts before this court that draws the issue of constructive notice into dispute.[1]  It would be speculative for a jury to conclude that the alleged dip existed

---

[1] The plaintiff attempts to cure the deficiencies in her case by arguing that Virginia law on premise liability is only applicable to cases that have been submitted to and decided by the finder of fact. Although it is a correct statement that the Virginia case law on point deals only with cases that had been decided by a jury, this is largely a distinction without a difference. The plaintiff misconstrues the procedural differences that exist between summary judgment in federal court and Virginia state court. In Virginia, the procedure for summary

for such a length of time that the defendant should have discovered it in the exercise of ordinary care.

Accordingly, summary judgment is appropriate because the defendant has failed to make a sufficient showing of an element essential to her case, notice, and one that she bears the burden of proving at trial. *Celotox*, 477 U.S. at 322.

III

For the reasons stated herein, summary judgment will be entered in favor of the defendant. A separate judgment will be entered forthwith.

DATED: April 12, 2007

/s/ JAMES P. JONES
Chief United States District Judge

---

judgment is substantially different because it is cabined by a statutory restriction on the materials that the court may consider in granting the motion. In federal court, summary judgment is frequently granted based on depositions taken during the course of discovery. The use of such materials in Virginia to support a motion for summary judgment is strictly prohibited. *See* Va. Code Ann. § 8.01-420 (Michie 2000 & Supp. 2006).